# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

| | |
|---|---|
| MELVIN NANCE, | |
| Movant, | CIVIL ACTION NO.: 2:16-cv-77 |
| v. | |
| UNITED STATES OF AMERICA, | (Case No.: 2:14-cr-6) |
| Respondent. | |

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Movant Melvin Nance ("Nance"), who is currently incarcerated at the Federal Correctional Institution in Yazoo City, Mississippi, filed a Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255. (Doc. 1.) Respondent filed a Response, (doc. 3), to which Nance filed a Reply, (doc. 4).[1] Nance also filed a Motion for Summary Judgment and a Motion for Evidentiary Hearing. (Docs. 6, 8.) In addition, Nance filed a Motion to Compel the Magistrate for Report and Recommendation. (Doc. 11.) For the reasons which follow, I **RECOMMEND** the Court **DENY** Nance's Section 2255 Motion, **DISMISS as moot** his Motion for Summary Judgment[2], **DIRECT** the Clerk of Court to **CLOSE** this case and enter

---

[1]   In his Reply, Nance asserts the Government's Response to his Section 2255 Motion should be disregarded because it was untimely. (Doc. 4, p. 9.) By Order dated June 3, 2016, the Court ordered the Government to file a Response to Nance's Motion within thirty (30) days. (Doc. 2.) Thus, the Government had until July 3, 2016, to file its Response. Because July 3, 2016, was a Sunday and Monday, July 4, 2016, was a federal holiday, the Government had until July 5, 2016, to file a timely Response. Fed. R. Civ. P. 6(a)(1)(A) & (C). Thus, the Government's July 5, 2016, filing of its Response was timely.

[2]   Nance bases his Motion for Summary Judgment on his assertions that the Government responded to his Section 2255 Motion late and that he provided an affidavit that had not been rebutted. (Doc. 6, p. 1.) As discussed in footnote 1 of this Report, the Government filed its Response in a timely manner. In addition, the Government has rebutted Nance's affidavit.

the appropriate judgment of dismissal, and **DENY** Nance a Certificate of Appealability and *in forma pauperis* status on appeal. For these same reasons, the Court **DENIES** Nance's Motion for Evidentiary Hearing and **DISMISSES as moot** his Motion to Compel.

## BACKGROUND

Nance originally was convicted in the Middle District of Florida, after entry of a guilty plea, of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He was sentenced to 151 months' imprisonment. J., United States v. Nance, 3:08-cr-00075-MMH-JRK (M.D. Fla. Dec. 2, 2009), ECF No. 91. On January 28, 2014, Nance was housed at the Federal Prison Camp in Jesup, Georgia. (Doc. 3, p. 1.) Senior Correctional Officer Kerry Brown received information on this same date that Nance was in possession of contraband. Officer Brown went to Nance's cubicle, searched Nance and his cellmate, and instructed Nance to leave the area so that Officer Brown could search the cubicle. However, Nance remained at the entrance to his cubicle while Officer Brown searched it. Nance then rushed past Officer Brown and entered the cubicle. Officer Brown and Nance were involved in a struggle of some sort until Officer Brown became fatigued and Nance was able to free himself. Nance then left the Prison Camp grounds.

The next day, United States Magistrate Judge James E. Graham issued a warrant for Nance's arrest based on a Criminal Complaint filed by the United States Marshals Service charging Nance with fleeing a Bureau of Prisons' facility "without authorized permission." Compl., United States v. Nance, 2:14-cr-6 (S.D. Ga. Jan. 29, 2014), ECF No. 1. Nance was arrested on January 30, 2014, and he was later charged by Indictment with knowingly escaping an institutional facility in which he was lawfully confined, in violation of 18 U.S.C. § 751, by virtue of the criminal conviction obtained in the Middle District of Florida. Indictment, United

States v. Nance, 2:14-cr-6 (S.D. Ga. Feb. 6, 2014), ECF No. 9. Nance faced a statutory penalty of not more than five (5) years' imprisonment and a term of supervised release of not more than one (1) year. Penalty Cert., United States v. Nance, 2:14-cr-6 (S.D. Ga. Feb. 6, 2014), ECF No. 10. Nance was originally represented by David Osborne, and, after Nance filed a letter requesting new counsel and a hearing on the matter, the Court appointed Keith Higgins to represent Nance. CJA 20s, United States v. Nance, 2:14-cr-6 (S.D. Ga. Feb. 7 & Mar. 11, 2014), ECF Nos. 17, 26. In conformity with its liberal discovery policy, the United States Attorney's Office disclosed all materials in its possession, including a copy of Officer Brown's personnel file. (Doc. 3, p. 2.); Min. Entry, United States v. Nance, 2:14-cr-6 (S.D. Ga. May 21, 2014), ECF No. 90.

After a jury was empaneled, Nance chose to change his plea to guilty without a written plea agreement. Id.; Change of Plea, United States v. Nance, 2:14-cr-6 (S.D. Ga. May 21, 2014), ECF No. 93. The Honorable Lisa Godbey Wood conducted a change of plea, or Rule 11, hearing on the same day Nance changed his plea. After discussion with Nance of all of the rights he was waiving by pleading guilty to the charged offense, Judge Wood informed Nance that, if she accepted his plea, the sentencing phase was all that remained of his case. Change of Plea Hr'g Tr., United States v. Nance, 2:14-cr-6 (S.D. Ga. Jan. 23, 2015), ECF No. 117, p. 8. Nance affirmed he was satisfied with Mr. Higgins' representation of him and had no complaints whatsoever. Id. at pp. 8–9. Judge Wood noted the two (2) essential elements of the escape offense and asked Nance whether he understood that pleading guilty was an admission that those elements were satisfied. Judge Wood then advised Nance that the maximum statutory penalty she could impose was "not more than five (5) years['] imprisonment, a fine of not more than

$250,000, a term of supervised release of not more than a year[3], and a special assessment of $100." Id. at p. 10. Nance expressed his understanding of the maximum penalties. Id. Judge Wood explained to Nance she had to impose a sentence upon him, and in so doing, she had to take into consideration the advisory Sentencing Guidelines, any possible departures from the Guidelines, all of the sentencing factors set forth in 18 U.S.C. § 3553, and his offense behavior. Id. at pp. 11–12. After accepting Nance's plea of guilty, Judge Wood advised Nance she would have a United States Probation Officer prepare a Pre-Sentence Investigation report ("PSI"), which would be disclosed to Nance and the Government, and then the Court would schedule a sentencing hearing. Id. at pp. 27–28.

In the PSI, Nance's base offense level for escape was 13. PSI, ¶ 16 (citing U.S.S.G. § 2P1.1(a)(1)). Five (5) levels were added for specific offense characteristics due to Nance's escape offense involving the use or threat of force and assaulting a correctional officer. Id. at ¶ 17 (citing U.S.S.G. § 2P1.1(b)(1)). As support for the five-level increase, United States Probation Officer Brian Mills stated in the PSI:

> Nance then rushed past the CO, entering the cell. It was believed that the defendant's motivation was, at least in part, to retrieve a contraband item (believed to be a cellular telephone) in an effort to prevent the item from being found and seized by the CO. A struggle between Nance and the CO ensued during which both individuals fell to the ground. The struggle continued on the ground until the CO became fatigued and Nance was able to extricate himself from the altercation. The defendant then fled from the building, making his escape into a wooded area beyond the facility's boundary line.

Id. at ¶ 6. As another specific offense characteristic, four (4) levels were subtracted based on Nance's escape from non-secure custody. Id. at ¶ 18 (citing U.S.S.G. § 2P1.1(b)(3)). Probation

---

[3] Assistant United States Attorney Joseph Newman amended the penalty certification during the Rule 11 hearing to read that Nance faced a term of supervisory release of not more than three (3) years. Change of Plea Hr'g Tr., United States v. Nance, 2:14-cr-6 (S.D. Ga. Jan. 23, 2015), ECF No. 117, p. 12. However, Judge Wood advised she would not entertain a term of supervised release of more than one (1) year, to which the Government did not object. Id.

Officer Mills did not award Nance with a further reduction for acceptance of responsibility because Nance "vehemently denie[d] that he used any degree of force to effect his escape. This position conflicts with the facts of this [case,] which establish that the defendant struggled with the CO when fleeing his cell." Id. at ¶ 13. With a total offense level of 14 and a criminal history category of V, Nance's recommended Guidelines' range was 33 to 41 months' imprisonment. Id. at ¶ 83.

At the sentencing hearing, Judge Wood overruled Nance's objections to the PSI regarding his use of an alias and the findings as to Nance's substance abuse history and stated that neither of these objections affected her sentence calculation. Sent. Hr'g Tr., United States v. Nance, 2:14-cr-6 (S.D. Ga. Dec. 5, 2014), ECF No. 114, pp. 65–67. Nance also objected to Probation Officer Mills' recommendation that Nance not receive a reduction for acceptance of responsibility. Judge Wood sustained this objection and awarded Nance a two-level reduction. Id. at p. 67. In addition, Nance objected to the recommended five-level increase for the use of force, id. at pp. 5–6, and the Court heard testimony and argument as to this objection.

Officer Brown provided extensive testimony regarding the events of January 28, 2014, particularly the circumstances surrounding Nance's escape. Id. at pp. 8–44. Officer Brown received anonymous information that Nance had at least one cell phone in his cubicle. Responding to that information, Officer Brown directed Nance and his cell mate to step outside of their cubicle and submit to a pat down search so that Officer Brown could conduct a shakedown of the cubicle. Id. at pp. 14–15. Nance did not immediately follow Officer Brown's orders to step outside and submit to a pat search but "reluctantly" and "slowly" complied with the orders after Officer Brown gave them a third time. Id. at pp. 16–18. Officer Brown stated Nance was acting nervously, like there was something he did not want Officer Brown to find. Id.

at p. 18. Officer Brown testified that he then told Nance to step away from the cubicle so that he could conduct the shakedown, and Nance complied after Officer Brown's additional directive. Id. at pp. 18–20. However, Officer Brown turned his head and noticed Nance was standing in the entry way again. Nance stepped back into the cubicle, preventing Officer Brown from conducting the shakedown. Id. at p. 21. Despite Officer Brown's directives to step back and to walk away, Nance kept walking toward Officer Brown. Id. Nance had his hands in front of his body and tried to get around Officer Brown by pushing him. Id. at p. 22. When Nance pushed him, Officer Brown grabbed him in a bear hug in an effort to restore order. Nance tried to break free from Officer Brown's grasp, and Officer Brown repeatedly told him to stop resisting. Id. at p. 23. Officer Brown and Nance were "tussling", and they fell to the floor. Id. at p. 24. Officer Brown was able to activate his radio's body alarm to signal an emergency situation to the control center. Officer Brown also was able to hold Nance "for another minute or two[]" until he was "too tired" to hold Nance any longer. Id. at pp. 24, 39. Nance got off the floor, grabbed something off his bed, and walked out of the cubicle. Another officer came to Nance's cubicle to assist Officer Brown approximately one to two minutes after Nance left this area. The officers conducted an accountability count, and Nance was missing from this count. Id. at p. 26. Staff members searched the grounds for Nance and were unable to find him at the Prison Camp. Id. at p. 27.

On cross-examination, Officer Brown admitted he may have told Probation Officer Mills at some point that Nance only "rushed past" him, but the reason that differed from his testimony at the sentencing hearing and what he initially told Probation Officer Mills had nothing to do with being under oath. Id. at pp. 35–37. On re-direct, Officer Brown clarified that the memorandum he wrote after the incident with Nance was consistent with his testimony at the

sentencing hearing. Id. at p. 43. Officer Brown reiterated that Nance pushed him, although Nance did nothing else to get past Officer Brown. Id. at p. 39.

Probation Officer Mills testified that he stated in Nance's initial PSI that Nance pushed Officer Brown. Id. at p. 48. After written objections were submitted, Probation Officer Mills submitted a revised PSI as the final PSI to the Court, and the final PSI indicated Nance "rushed past" Officer Brown. Id. Probation Officer Mills stated he made this revision after speaking with Officer Brown, who did not mention anything about being pushed during their conversation. Id. at p. 49. Upon Judge Wood's inquiry, Probation Officer Mills testified he recommended Nance receive the five-level enhancement based on Officer Brown's statements that Officer Brown tried to restrain Nance, but Nance "resisted" and the two had a "struggle or wrestling match which basically went to the ground. . . . Officer Brown continued to try to gain control of Mr. Nance, but [he] continued to fight to get away from [Officer Brown]." Id. at p. 50. Officer Mills also testified that he took Officer Brown's report from within 24 hours after the incident to establish the offense conduct in this case, rather than his conversation with Officer Brown seven (7) months after the fact. Id. at p. 51.

Mr. Higgins argued that Officer Brown's credibility had been impeached because he testified that Nance had pushed him, which was different than what he had told Probation Officer Mills, who had inquired about the facts of this case for a specific purpose. Id. at p. 58. Mr. Higgins also argued Officer Brown's credibility was impeached based on his admission that he had been disciplined for having violated his duties for credit card fraud.[4] Mr. Higgins declared that, while there was no force involved, to the extent it could be construed as force, said force

---

[4] Officer Brown conceded during direct examination that he had been arrested for theft by conversion in 2009, and those charges were dismissed. He also conceded he had been disciplined ten (10) years prior for misuse of a government credit card. Sent. Hr'g Tr., United States v. Nance, 2:14-cr-6 (S.D. Ga. Dec. 5, 2014), ECF No. 114, pp. 10, 12.

was not used for the purpose of Nance's escape.  Id. at p. 59.  For these reasons, Mr. Higgins

submitted the five-level enhancement should not apply.  Id. at pp. 61–62.

Judge Wood overruled Nance's "main objection" regarding the five-level enhancement.

Id. at p. 66.  In so doing, Judge Wood found:

> And having had the opportunity to watch the witnesses testify live here in court today and assess their credibility, and thinking about just common sense and logic as it applies to what transpired back on January 28th, based, in part, on the personal observations I was able to make today, I find by a preponderance of the credible evidence, first, that some type of physical altercation did occur between the correctional officer and Mr. Nance.
>
> I find that Mr. Nance instigated the physical contact.  I am unable to tell whether there was pushing, and if so, at what point it did occur.  But a certain degree of physical force would inherently be necessary to influence the outcome of that bear hug that occurred.
>
> As I say, it is the Court's specific finding, based on my assessment of credibility, that Mr. Nance did instigate the physical conduct and force.  I also find, with regard to whether that force was involved in the escape, that it was; that Mr. Nance's actions transitioned to escape almost immediately.  Once he was able to get free from the correctional officer's grasp, he grabbed his contraband and immediately proceeded to leave the facility as far as anyone could tell.  It would be hard to wind up in downtown Brunswick from Jesup without having realized some use of force in that connection.
>
> As a result, those objections are overruled, and the five-level increase is properly placed in this [C]ourt.

Id. at pp. 66–67.

Judge Wood reduced Nance's total offense level by two (2) levels based on acceptance of

responsibility.  Thus, Judge Wood found Nance's total offense level to be 12, and he was in

criminal history category V.  Judge Wood then found Nance's Guidelines' range to be 27 to 33

months in prison and one to three years' supervised release.  Judge Wood noted the statutory

maximum penalty was five years' imprisonment.  Id. at pp. 68–69.

In support of mitigation of sentence, Mr. Higgins noted the testimony of Erin Chalfant, a case management coordinator at the Jesup, Georgia, facility. Ms. Chalfant offered that Nance had previously been allowed to travel on his own to the Prison Camp in Jesup, and Nance reported to the facility as he should have. Id. at pp. 55–57, 69. Mr. Higgins sought a downward variance, as well, so that Nance could help care for his parents. Id. at pp. 69–70. He also asked that Nance's sentence in this case be ordered to run concurrently with his sentence obtained in the Middle District of Florida. Id. at p. 72. In contrast, the Government requested that the Court impose a sentence at the higher end of the Guidelines' range because Nance's escape from the Prison Camp is an inherently dangerous crime under Section 3553(a) and that his sentence be imposed to run consecutively to the term of imprisonment Nance was already serving. Id. at pp. 73–74, 77. Nance addressed the Court and admitted to having escaped and having had "a big altercation" with Officer Brown, but he said he intended on going back to the Prison Camp. Id. at p. 78.

Judge Wood sentenced Nance to 31 months' imprisonment, to be served consecutively to the sentence he obtained in the Middle District of Florida. Judge Wood specifically stated,

> I will say, having considered the § 3553 factors, that I would impose 31 months based on those factors regardless of the outcome of certain of the objections that were leveled. Looking at the need to curtail escapes from federal institutions, looking at the nature of the offense that actually did occur, and the good and the bad in Mr. Nance's background, 31 months custody is the right amount. It is [a] sufficient but not greater [than] necessary punishment.

Id. at p. 82.

Nance filed a direct appeal and argued that this Court erred by increasing the Guidelines' range on the ground he used force against another person. In addition, Nance alleged the altercation upon which this Court relied in imposing his sentence was unrelated to the charge of escape and could not consist of relevant conduct. Appeal Op., United States v. Nance, 2:14-cr-6

(S.D. Ga. May 27, 2015), ECF No. 118, p. 2. The Eleventh Circuit Court of Appeals did not reach the merits of Nance's appeal because this Court stated at sentencing "it would have imposed the same sentence based on the 18 U.S.C. § 3553(a) factors, regardless of the Guidelines sentence range." Id. Accordingly, the Eleventh Circuit found any procedural error this Court may have committed in calculating Nance's sentence range was harmless and affirmed this Court's judgment. Id.

In his timely filed Section 2255 Motion, Nance levies several allegations that Mr. Higgins, his counsel at trial, sentencing, and on appeal, provided ineffective assistance. First, Nance contends Mr. Higgins erred by not arguing on appeal that the length of time he was absent from the Prison Camp did not meet the elements of the charged escape. (Doc. 1-1, p. 1.) Next, Nance asserts Mr. Higgins was ineffective for failing to raise at sentencing or on appeal that he did not use force during his escape, which is not a "violent felony" within the meaning of the Armed Career Criminal Act, ("ACCA"), 18 U.S.C. § 924(e). (Id. at p. 2.) In addition, Nance asserts Officer Brown provided inconsistent statements during the sentencing hearing, and Mr. Higgins was ineffective for failing to raise this issue on appeal. (Id. at p. 9.) Moreover, Nance asserts Mr. Higgins was ineffective for not objecting to the increase in sentencing on the ground that he used force during the escape. (Id. at p. 11.)

The Government responds that Nance's claims of ineffective assistance are meritless, and his Section 2255 Motion should be denied as a result. (Doc. 3.) Nance states in his Reply that Mr. Higgins was ineffective for failing to impeach Officer Brown. (Doc. 4, p. 3.) In addition, Nance asserts the Government committed fraud upon this Court by allowing Officer Brown to testify without providing Mr. Higgins information that Officer Brown was under investigation. (Id. at p. 6.)

The Court addresses the parties' contentions in turn.

## DISCUSSION

**I.      Nance's Ineffective Assistance of Counsel Claims**

Criminal defendants have a right to effective assistance of counsel at all critical stages of the proceedings.  Strickland v. Washington, 466 U.S. 668 (1984).  This right extends to the entry of a guilty plea, Hill v. Lockhart, 474 U.S. 52, 58 (1985), and during sentencing proceedings, Glover v. United States, 531 U.S. 198, 202 (2001).

To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance.  Id. at 685–86.  The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985).  There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance.  Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686).  "It is petitioner's burden to 'establish that counsel preformed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'"  LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014) (quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (alteration in original)). "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. (internal citation omitted).  "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense."  Id. at 1312–13.  "The

likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011). "In evaluating performance, 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" LeCroy, 739 F.3d at 1312 (quoting Strickland, 466 U.S. at 690). "If a petitioner cannot satisfy one prong, we need not review the other prong." Duhart v. United States, 556 F. App'x 897, 898 (11th Cir. 2014). "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690.

To the extent Nance argues his counsel's performance on appeal was deficient, such claim is "governed by the same standards applied to trial counsel under Strickland." Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009). "A defendant can establish ineffective assistance of appellate counsel by showing: (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal." Shere v. Sec'y. Fla. Dep't of Corr., 537 F.3d 1304, 1310 (11th Cir. 2008) (citing Smith v. Robbins, 528 U.S. 259, 285–86 (2000)). "Appellate counsel is not ineffective for failing to raise claims reasonably considered to be without merit." Jones v. Sec'y, Dep't of Corr., 487 F. App'x 563, 568 (11th Cir. 2012) (citing Nyhuis, 211 F.3d at 1344). "An attorney is not required under the Constitution or the Strickland standards to raise every non-frivolous issue on appeal." Brown v. United States, 720 F.3d 1316, 1335 (11th Cir. 2013) (citing Jones v. Barnes, 463 U.S. 745, 754 (1983) ("Nothing in the Constitution or our interpretation of that document requires an appellate attorney to raise every 'colorable' claim suggested by a client.").

## A.     Counsel's Failure to Argue Nance was Absent for Only Sixteen (16) Hours

Nance contends he was only away from the Prison Camp for sixteen (16) hours.  Thus, Nance asserts Mr. Higgins was ineffective for failing to argue Nance did not meet the elements required for an escape charge.  (Doc. 1-1, p. 1.)  The Government asserts there is no minimum amount of time a defendant must be gone from custody to constitute an escape.  (Doc. 3, p. 12.)

Section 751 of Title 18 of the United States Code provides, in relevant part, "Whoever escapes . . . from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, . . ., shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined under this title or imprisoned not more than five years, or both[.]"  18 U.S.C. § 751(a).  "To sustain a conviction for escape by an inmate in custody . . ., the government must prove . . .: (1) the defendant was in the custody of the Attorney General, (2) as the result of a conviction, and (3) the defendant escaped from that custody."  United States v. Gibbs, 296 F. App'x 885, 886 (11th Cir. 2008) (citing United States v. Bailey, 444 U.S. 394 (1980)).  Section 751(a) "does not define the term 'escape,' [but] courts and commentators are in general agreement that it means absenting oneself from custody without permission."  Bailey, 444 U.S. at 407.

Nance pled guilty to the charged offense of escape, which means he pled guilty to absenting himself from the Jesup Prison Camp without permission.  Section 751(a) does not have an attendant temporal requirement, and thus, it is immaterial whether Nance was absent without permission from the Camp for a minute, sixteen hours, or a year.[5]  As a result, Nance suffered no

---

[5]  Section 2P1.1(b)(2) of the Sentencing Guidelines provides that, if the defendant escaped from non-secure custody and returned voluntarily within ninety-six (96) hours, the offense level will be decreased by four (4) levels.  "Returned voluntarily" includes "voluntarily returning to the institution or turning one's self in to a law enforcement authority as an escapee[.]"  Application Note 2, U.S.S.G. § 2P1.1.

prejudice from Mr. Higgins' failure to raise Nance's absenteeism for "only" sixteen (16) hours as a defense or a mitigating factor to the charged offense. Nance fails to establish Mr. Higgins was ineffective as to this enumeration, and the Court should **DENY** this portion of Nance's Motion.

**B.    Counsel's Failure to Argue Nance did not Commit a Crime of Violence**

Nance admits that he pushed Officer Brown, but only to get the officer off of him. Nance contends he pushed Officer Brown based on the "exigent circumstances of fear of being injured" because Officer Brown was kicking him, which made the push reckless but not a violent use of force. (Doc. 1-1, p. 2.) Nance contends Section 2P1.1 of the Sentencing Guidelines contains language similar to the residual clause of the ACCA, which the United States Supreme Court struck down in <u>Johnson v. United States</u>, ___ U.S. ___, 135 S. Ct. 2551 (June 26, 2015). (<u>Id.</u> at p. 4.) Nance argues his counsel was ineffective for failing to anticipate this change of law and failing to making this argument on appeal. (<u>Id.</u> at p. 3.)

The Government avers the ACCA's residual clause had no bearing on Nance's sentence. Instead, the Government asserts Nance's Section 2P1.1(b)(1) enhancement is unrelated to the ACCA's residual clause and is still valid after <u>Johnson</u>. Additionally, the Government notes <u>Johnson</u> did not invalidate any of the Sentencing Guidelines, which are advisory. (Doc. 3, pp. 13–14.)

Under the Armed Career Criminal Act ("ACCA"), any person who violates 18 U.S.C. § 922(g) and has on three or more occasions been convicted for a "serious drug offense" or "violent felony" will receive a mandatory minimum sentence of fifteen years' imprisonment. 18 U.S.C. § 924(e)(1). In <u>Johnson</u>, the Supreme Court explained that the ACCA:

> defines 'violent felony' as follows: 'any crime punishable by imprisonment for a term exceeding one year . . . that—'(i) has as an element the use, attempted use,

Here, Nance may have been an escapee for less than 96 hours from a non-secure facility, but he did not return voluntarily to the Jesup Camp. Instead, the United States Marshals Service had to arrest him.

or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*' § 924(e)(2)(B) (emphasis added). The closing words of this definition, italicized above, have come to be known as the Act's residual clause.

___ U.S. at ___, 135 S. Ct. at 2555–56. The Court held that "imposing an increased sentence under the residual clause of the [ACCA] violates the Constitution's guarantee of due process[.]" ___ U.S. at ___, 135 S. Ct. at 2563. However, the Court also emphasized that its "decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." Id.

The ACCA was not mentioned in Nance's PSI, nor did Judge Wood mention this Act during sentencing. Instead, Judge Wood determined Nance's offense level should be increased by five levels under the Sentencing Guidelines based on her finding that Nance used some measure of force to effectuate his escape. Sent. Hr'g Tr., United States v. Nance, 2:14-cr-6 (S.D. Ga. Dec. 5, 2014), ECF No. 114, p. 67. Section 2P1.1(b)(1) of the Sentencing Guidelines calls for a five-level increase if the escape offense involved "the use or the threat of force against any person[.]" In contrast, the ACCA's now-defunct residual clause categorized a "violent felony" as involving "conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). Thus, the ACCA's residual clause had no bearing on Nance's sentence enhancement under the Guidelines, and his enhancement, which in no way was based on the ACCA's residual clause, remains valid in the post-Johnson landscape. What is more, the Eleventh Circuit has determined that Johnson fails to invalidate any provision of the Sentencing Guidelines, which are advisory in nature. United States v. Matchett, 802 F.3d 1185 (11th Cir. 2015). Mr. Higgins cannot be said to have rendered ineffective assistance by failing to raise a non-meritorious claim on appeal. Thus, the Court should **DENY** this portion of Nance's Motion.

**C.** **Counsel's Failure to Raise Officer Brown's Inconsistent Statements and the Government's Related Fraud Upon the Court**

Next, Nance asserts Officer Brown stated that he and Nance had gotten into a "struggle", whereas on another occasion, Officer Brown stated Nance pushed him. (Doc. 1-1, p.9.) Nance contends the Government knew of the inconsistencies in Officer Brown's statements and failed to correct him, which caused the Court to be misled. Nance maintains Mr. Higgins was ineffective for failing to raise this issue on appeal pursuant to Napue v. Illinois, 360 U.S. 264 (1959).

The Government responds that there is nothing inconsistent or contradictory about Officer Brown's statements "because each one describes what happened at a different point in time during the entire incident between Officer Brown and Nance." (Doc. 3, p. 15.) The Government states Officer Brown's testimony does not approach perjury, as there is no indication Officer Brown had the willful intent to provide false testimony. Rather, the Government avers Officer Brown's testimony and Probation Officer Mills' testimony as to whether Nance had pushed Officer Brown or simply brushed past him differ based on one person's mistake or faulty memory of a previous interview. The Government also avers that, even if there were a discrepancy between Officer Brown's testimony and that of Probation Officer Mills, such a discrepancy was immaterial because Judge Wood found Nance had used some force to escape.

In Napue, the Supreme Court analyzed the effect of a witness who testified that the prosecutor had not made any promise to him in exchange for his testimony against the petitioner and the prosecutor failed to correct that testimony the prosecutor knew to be false. The Supreme Court determined that the failure of the prosecutor to correct the testimony of a witness he knew to be false violated the petitioner's right to due process, in violation of the Fourteenth

Amendment. 360 U.S. at 269–71. The Supreme Court concluded that the "false testimony used by the State in securing the conviction of petitioner may have had an effect on the outcome of the trial." Id. at 272.

Here, there is no evidence that Officer Brown testified falsely or that the Government failed to correct any of Officer Brown's testimony it knew to be false. Instead, the evidence of record reveals that Officer Brown testified during the sentencing hearing that he told Probation Officer Mills that Nance had pushed him during the incident. Sent. Hr'g Tr., United States v. Nance, 2:14-cr-6 (S.D. Ga. Dec. 5, 2014), ECF No. 114, p. 35. Probation Officer Mills testified during the sentencing hearing that Officer Brown told him that Nance brushed up against Officer Brown. Id. at p. 48. In addition, Probation Officer Mills testified that he originally stated in Nance's PSI that Nance pushed Officer Brown. Id. However, after written objections were submitted, Probation Officer Mills submitted a revised PSI as the final PSI to the Court, and the final PSI indicated Nance "rushed past" Officer Brown. Id. Probation Officer Mills stated he made this revision after speaking with Officer Brown, who did not mention anything about being pushed during their conversation. Id. at p. 49. Upon Judge Wood's inquiry, Probation Officer Mills testified he recommended Nance receive the five-level enhancement based on Officer Brown having told him that he (Officer Brown) tried to restrain Nance, but Nance "resisted" and that he and Officer Brown had a "struggle or wrestling match which basically went to the ground. . . . Officer Brown continued to try to gain control of Mr. Nance, but [he] continued to fight to get away from [Officer Brown]." Id. at p. 50. Probation Officer Mills also testified that he took Officer Brown's report from within 24 hours after the incident to establish the offense conduct in this case, rather than his conversation with Officer Brown seven (7) months after the fact. Id. at p. 51.

Nance's assertions in this regard in no way approach the level of false testimony present in <u>Napue</u>. Not only did Officer Brown not provide the Court with false testimony, the Government would have been under no duty to correct any testimony it knew to be false since there was no false testimony. Additionally, even if there were a discrepancy in the accounts of events surrounding Nance's escape, any such discrepancy was immaterial. Judge Wood found Nance deployed some measure of force to effectuate his escape, whether that force was a push or simply a brush past Officer Brown. Judge Wood determined Nance's conduct satisfied the criterion for the five-level enhancement. This instance of a claim for ineffective assistance is without merit, as Nance cannot show that he was prejudiced as a result of Mr. Higgins failing to raise this issue before this Court or on appeal. Consequently, the Court should **DENY** Nance's Motion on this ground.

### D. Counsel's Failure to Object to the Court's Sentencing Range/Failure to Further Impeach Officer Brown

Nance alleges that the Court would not have imposed an upward variance had Mr. Higgins advised the Court that Officer Brown: had brought the cell phone to Nance; had been fired for bringing contraband to other prisoners; and was under investigation at the time of sentencing. (Doc. 1-1, pp. 11–12.) Nance appears to state that, given this mitigating evidence, Judge Wood would not have believed Officer Brown's testimony that Nance pushed him, and she would not have given Nance a higher sentence based on the five-level enhancement for use of force.

The Government asserts Nance's allegations are outrageous, and the timing of his allegations is suspicious. (Doc. 3, p. 18.) The Government maintains it gave Nance a copy of Officer Brown's personnel file, and if these allegations were true, there would have been something in that regard in Officer Brown's file. The Government also maintains Nance

testified during his Rule 11 hearing that he had no complaints about Mr. Higgins, who in turn stated he was unaware of any impropriety involved in Nance's case. Additionally, the Government states Mr. Higgins impeached Officer Nance during sentencing by using the information it had disclosed regarding the misuse of a credit card, and it defies belief that Mr. Higgins chose not to raise such allegations "if they really had been extant." (Id. at p. 19.) Finally, the Government states Nance forfeited this argument when he failed to mention these allegations—despite his knowledge at the time of these allegations—during his account of the incident.

However, the Government contends Mr. Higgins did not render ineffective assistance by failing to raise these allegations because there is no reasonable probability Judge Wood would have lowered Nance's sentence. First, the Government contends the five-level enhancement would have applied even if Judge Wood disbelieved Officer Brown's testimony that Nance pushed him. Nance himself described getting into a "big altercation" with Officer Brown during which he "bust[ed] loose" from the bear hug, and Mr. Higgins conceded there was a "tussle". (Id. at p. 20). Second, Judge Wood stated she would impose the same sentence regardless of the Sentencing Guidelines, given the Section 3553 factors she also had to take into account.

Even if Mr. Higgins failed to raise these allegations of corruption specifically with Judge Wood, Nance fails to establish the requisite prejudice to sustain this assertion of ineffective assistance of counsel. During the sentencing hearing, Judge Wood found Nance used some measure of force to effectuate his escape, which made the five-level enhancement under the Sentencing Guidelines applicable. Sent. Hr'g Tr., United States v. Nance, 2:14-cr-6 (S.D. Ga. Dec. 5, 2014), ECF No. 114, pp. 66–67. Even in the absence of a finding that Nance used no force in effectuating his escape (and thus discrediting Officer Brown's testimony, at least in

part[6]), Judge Wood declared she would have imposed the same sentence upon Nance regardless of the Sentencing Guidelines' enhancement, given the nature of the escape offense, the need to stop future escapes, and Nance's background.  Id. at p. 82.   Therefore, Nance's 31-month sentence would have been imposed, regardless of the application of the five-level enhancement under the Sentencing Guidelines.  United States v. Rives, 683 F. App'x 806, 811 (11th Cir. 2017) (quoting United States v. Barner, 572 F.3d 1239, 1248 (11th Cir. 2009) ("Where a district judge clearly states that [s]he would impose the same sentence, even if [s]he erred in calculating the guideline range, then any error in the calculation is harmless.")).  The Eleventh Circuit affirmed Nance's sentence on this same basis.  United States v. Nance, 604 F. App'x 918 (11th Cir. 2015). As Nance fails to meet both prongs of the Strickland test, he cannot advance a successful ineffective assistance of counsel claim.  This enumeration of error is also without merit, and the Court should **DENY** this portion of Nance's Motion.

## II.     Nance's <u>Brady</u> Claim

Nance asserts the Government knew Officer Brown was being investigated for approaching inmates about buying contraband, yet failed to disclose this information, in violation of Brady v. Maryland, 373 U.S. 83 (1963).[7]  (Doc. 1-1, p. 10.)

---

[6]  Mr. Higgins argued to Judge Wood during the sentencing hearing that Officer Brown's testimony had been impeached because he testified to something different than what he told the Probation Officer.  Sent. Hr'g Tr., United States v. Nance, 2:14-cr-6 (S.D. Ga. Dec. 5, 2014), ECF No. 114, pp. 58–59.

[7]  This Court ruled in Nance's criminal prosecution that the Government was not required to disclose any further documentation from Officer Brown's personnel file than it already had—save the documentation regarding Officer Brown's one-day suspension for the unauthorized use of a government-issued travel credit card, which had already been disclosed to Nance—under Brady and its progeny.  Orders, United States v. Nance, 2:14-cr-6 (S.D. Ga. May 20 & 21, 2014), ECF Nos. 88, 89.

The Government contends Nance waived any <u>Brady</u> claim by pleading guilty.[8]  The Government also contends any alleged failure to disclose this information would not have resulted in a lower sentence for Nance; thus, Nance cannot show he was prejudiced by such failure.  Finally, the Government asserts Nance was aware of the allegations against Officer Brown at or before sentencing, and the Government cannot be accused of suppression if Nance knew of the information or had equal access to obtaining it.  (Doc. 3, pp. 22–23.)

The Supreme Court has held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." <u>Brady</u>, 373 U.S. at 87.  A <u>Brady</u> violation is established when a petitioner shows that: "(1) the prosecution possessed evidence favorable to the accused, because it was either exculpatory or impeaching, and did not disclose it to the defense; (2) the State suppressed the evidence such that the defense did not otherwise possess the evidence and could not reasonably have obtained it; and (3) the evidence was material, and its absence yielded prejudice." <u>Gary v. Hall</u>, 558 F.3d 1229, 1255 (11th Cir. 2009).  "Evidence is material so as to establish prejudice only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>Id.</u>  "A 'reasonable probability' is a probability

---

[8]  In <u>United States v. Matthews</u>, 168 F.3d 1234, 1242 (11th Cir. 1999), the Eleventh Circuit stated "the rule that a defendant who pleads guilty waives all non-jurisdictional defenses is not absolute."  The Eleventh Circuit declined to decide "whether a guilty plea waives a defendant's claims under <u>Brady</u>, or—assuming that a <u>Brady</u> claim is not waived by a guilty plea—whether the <u>Brady</u> material must be known to the prosecution before the plea or merely before sentencing." <u>Id.</u>  The Eleventh Circuit then considered that the guilty plea did not waive the <u>Brady</u> claim and that the prosecutor learned <u>Brady</u> information before sentencing that had to be disclosed, the defendants' arguments "must still be rejected[]", <u>id.</u>, because "any alleged error [was] harmless." <u>Id.</u> at 1243.  Likewise, this Court need not delve into whether Nance waived his <u>Brady</u> claim by pleading guilty.  Rather, the Court can dispense of this claim by focusing on whether Nance sets forth a viable <u>Brady</u> violation, assuming as true the allegations that Officer Brown was under investigation, that this information was material, and that the Government failed to disclose that information.

sufficient to undermine confidence in the outcome."  Id. (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).  "'The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the [proceedings],' does not establish prejudice."  United States v. Brester, 786 F.3d 1335, 1339 (11th Cir. 2015) (quoting United States v. Agurs, 427 U.S. 97, 109–10 (1976)).

Mr. Higgins was able to opine that Officer Brown had been impeached during the sentencing hearing.  Sent. Hr'g Tr., United States v. Nance, 2:14-cr-6 (S.D. Ga. Dec. 5, 2014), ECF No. 114, pp. 58–59.  Nevertheless, and as noted above, whether Officer Brown had been impeached even further would have had no bearing on the sentence Judge Wood imposed upon Nance.  In determining Nance's Guideline range, Judge Wood relied, in part, on facts outside of Officer Brown's testimony, including Nance's own testimony, the agreed upon facts, and the inherent necessities of those facts.  Moreover, Judge Wood specifically stated that, regardless of the resolution of the Guidelines' objections (and, thus, the issues to which Nance claims impeachment of Officer Brown would have been relevant), she would have imposed the same sentence given the factors of Section 3553. Therefore, Nance has not shown any reasonable probability that, had the Government disclosed any alleged Brady information relating to Officer Brown, Nance's sentence would have been any different than what Judge Wood imposed.  As Nance fails to establish the necessary prejudice to advance a viable Brady claim, by extension, he cannot establish prejudice necessary to sustain a viable ineffective assistance claim in this regard.  The Court should **DENY** this portion of Nance's Motion.

III.    **Nance's Motion for Evidentiary Hearing (Doc. 8)**

Section 2255 does not require that the Court hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]"

Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (quoting 28 U.S.C. § 2255(b)). "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citation omitted). Moreover, a petitioner is not entitled to an evidentiary hearing where he asserts "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted); see also Lynn v. United States, 365 F.3d 1225, 1238–39 (11th Cir. 2004). Because Nance's claims lack merit as a matter of law or are otherwise affirmatively contradicted by the record, no evidentiary hearing is necessary. Consequently, the Court **DENIES** Nance's Motion for Evidentiary Hearing.

### IV.     Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Nance leave to appeal *in forma pauperis*. Though Nance has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v.

<u>Gross</u>, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact." <u>Napier v. Preslicka</u>, 314 F.3d 528, 531 (11th Cir. 2002); <u>see also</u> <u>Brown v. United States</u>, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued. Pursuant to Rule 11 of the Rules Governing Section 2255 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003). In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Id.</u> "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000); <u>see also</u> <u>Franklin v. Hightower</u>, 215 F.3d 1196, 1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." <u>Miller-El</u>, 537 U.S. at 336.

Based on the above analysis of Nance's Motion, as supplemented, and the Government's Response and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appealability; therefore, the Court should **DENY** the

issuance of a Certificate of Appealability.  If the Court adopts this recommendation and denies Nance a Certificate of Appealability, Nance is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts. Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith.  Thus, the Court should likewise **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **DENY** Nance's Section 2255 Motion, **DISMISS as moot** his Motion for Summary Judgment, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Nance a Certificate of Appealability and *in forma pauperis* status on appeal.  For these same reasons, the Court **DENIES** Nance's Motion for Evidentiary Hearing and **DISMISSES as moot** his Motion to Compel.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.  The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed

findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Nance and the United States Attorney for the Southern District of Georgia.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 3rd day of October, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA